No. 2024-1508

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

APPLE INC.,

*Appellant*,

v.

LBT IP I LLC,

*Appellee*.

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board, in No. IPR2020-01189

# OPENING BRIEF FOR APPELLANT APPLE INC.

Jaysen S. Chung, *Principal Attorney*
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
(415) 393-8271

Brian A. Rosenthal
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-2339

Julia G. Tabat
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue Suite 2100
Dallas, TX 75201
(214) 698-3465

*Counsel for Appellant Apple Inc.*

## REPRESENTATIVE PATENT CLAIM

**U.S. Patent No. 8,497,774 – Claim 8**

8. A local charging management device to manage electrical resource capability for an electronic tracking device that is tracked by at least one other tracking device comprising:

a battery power level monitor;

a charging unit; and

an electrical power resource management component to adjust cycle timing of at least one of a request rate of location coordinate packets to a target host and a listen rate of the location coordinate packets responsive to an estimated charge level of the charging unit;

wherein the battery power level monitor measures a power level of the charging unit and adjusts a power level applied to location tracking circuitry responsive to one or more signal levels, the power level comprising a multitude of threshold values determined by a user or system administrator to intermittently activate or deactivate the location tracking circuitry to conserve power of the charging unit in response to the estimated charge level of the charging unit.

# CERTIFICATE OF INTEREST

Counsel for Appellant Apple Inc. certifies the following:

1. The full name of every entity represented by me is:

   Apple Inc.

2. The parties named in the caption are the real parties in interest.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of Appellant are as follows:

   None.

4. The names of all law firms and the partners or associates that appeared for Appellee in the trial court or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

   ERISE IP, P.A.: Jennifer C. Bailey, Adam P. Seitz, Robin Snader

5. The following cases are related to and/or may be affected by the outcome of this appeal:

   *LBT IP I LLC v. Apple Inc.*, No. 19-cv-1245 (D. Del.)

   *LBT IP I LLC v. Apple Inc.*, Nos. 22-1613, 22-1614, 22-1615, 22-1616, 22-1617 (Fed. Cir.)

6. The following parties were involved in the above-listed cases:

   Apple Inc.

   LBT IP I LLC

7. The following law firms, partners, and associates were involved in the above-listed related cases:

   Erise IP, P.A.: Clifford T. Brazen, Abran J. Kean

   Potter Anderson & Corroon, LLP: David E. Moore, Bindu A. Palapura, Tracey E. Timlin, Stephanie E. O'Byrne

   Taft Stettinius & Hollister LLP: Brian S. Seal and Shaun D. Gregory

Weil, Gotshal & Manges LLP: Brian E. Ferguson, Robert T. Vlasis III, Daniel Musher, Ariane Moss, Audra Sawyer, Anne M. Cappella, Sudip Kundu

Young Conaway Stargatt & Taylor, LLP: Karen L. Pascale, Robert M. Vrana

8. There are no organizational victims or bankruptcy case debtors or trustees in this appeal.

Dated: July 3, 2024

*/s/ Jaysen S. Chung*

Jaysen S. Chung
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
(415) 393-8271

**TABLE OF CONTENTS**

Page

INTRODUCTION ....................................................................................1

STATEMENT OF THE ISSUES....................................................................4

STATEMENT OF THE CASE.......................................................................4

I. The ’774 Patent ..................................................................................5

A. Background of the Invention ......................................................5

B. The Appealed Claims of the ’774 Patent ....................................7

C. The Two Embodiments in the Specification Describing “Threshold Values”.......................................................................9

II. Procedural History..............................................................................15

A. *Inter Partes* Review Proceedings..............................................15

B. LBT Appeals the Construction of “Multitude” .........................17

C. The Board Construes “Threshold Values” as Limited to Battery Levels and as Excluding GPS Signal Level Threshold Values ........................................................................17

SUMMARY OF ARGUMENT ......................................................................21

STANDARD OF REVIEW ...........................................................................23

ARGUMENT ................................................................................................24

I. The Board Improperly Narrowed the Claim Language to Exclude “Threshold Values” Corresponding to GPS Signal Levels.................25

II. The Board’s Construction Improperly Omits One of the Specification’s Two Embodiments of “Threshold Values”................31

III. The Prosecution History Does Not Compel a Different Conclusion..........................................................................................42

CONCLUSION .............................................................................................46

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*ABS Glob., Inc. v. Cytonome/St, LLC*,
84 F.4th 1034 (Fed. Cir. 2023) ....................24

*AllVoice Computing PLC v. Nuance Communications, Inc.*,
504 F.3d 1236 (Fed. Cir. 2007) ....................41, 42

*Apple Inc. v. Corephotonics, Ltd.*,
81 F.4th 1353 (Fed. Cir. 2023) .................... 2, 22, 23, 24, 25, 32, 39

*Baxalta Inc. v. Genentech Inc.*,
972 F.3d 1341 (Fed. Cir. 2020) ....................46

*Chicago Board Options Exchange, Inc. v. International Securities Exchange, LLC*,
677 F.3d 1361 (Fed. Cir. 2012) ....................30

*CIAS, Inc. v. Alliance Gaming Corp.*,
504 F.3d 1356 (Fed. Cir. 2007) ....................28

*Comcast IP Holdings I LLC v. Sprint Commc'ns Co., L.P.*,
850 F.3d 1302 (Fed. Cir. 2017) ....................42

*Cordis Corp. v. Medtronic Ave, Inc.*,
511 F.3d 1157 (Fed. Cir. 2008) ....................27

*Evolusion Concepts, Inc. v. HOC Events, Inc.*,
22 F.4th 1361 (Fed. Cir. 2022) ....................29, 42

*Gillette Co. v. Energizer Holdings Inc.*,
405 F.3d 1367 (Fed. Cir. 2005) ....................28

*Google LLC v. EcoFactor, Inc.*,
92 F.4th 1049 (Fed. Cir. 2024) ....................29, 32, 39

*Kopykake Enterprises, Inc. v. Lucks Co.*,
264 F.3d 1377 (Fed. Cir. 2001) ....................46

*LBT IP I LLC v. Apple Inc.*,
No. 22-1613, Dkt. 39, 2023 WL 3914920 (Fed. Cir. June 9, 2023)....................4

*Moleculon Rsch. Corp. v. CBS, Inc.*,
793 F.2d 1261 (Fed. Cir. 1986) ....................................................................28

*Omega Eng'g, Inc. v. Raytek Corp.*,
334 F.3d 1314 (Fed. Cir. 2003) ....................................................................42

*Pacing Technologies, LLC v. Garmin International, Inc.*,
778 F.3d 1021 (Fed. Cir. 2015) ....................................................................41

*Paragon Sols., LLC v. Timex Corp.*,
566 F.3d 1075 (Fed. Cir. 2009) ....................................................................35

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ...................................................32, 35, 42

*Plantronics, Inc. v. Aliph, Inc.*,
724 F.3d 1343 (Fed. Cir. 2013) ....................................................................45

*Promptu Sys. Corp. v. Comcast Corp.*,
92 F.4th 1372 (Fed. Cir. 2024) .....................................................................26

*Seabed Geosolutions (US) Inc. v. Magseis FF LLC*,
8 F.4th 1285 (Fed. Cir. 2021) ..................................................24, 28, 41

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996) ......................................................................32

*WundaFormer, LLC v. Flex Studios, Inc.*,
680 F. App'x 925 (Fed. Cir. 2017) (non-precedential) ....................................28

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5(a), counsel for Apple Inc. states as follows:

The following consolidated appeals before the Patent Trial and Appeal Board were previously before this Court: *LBT IP I LLC v. Apple Inc.*, Nos. 22-1613, 22-1614, 22-1615, 22-1616, 22-1617 (Fed. Cir.). This Court decided those consolidated appeals on June 9, 2023, and the decision was not reported in the Federal Reporter. *See* Appx660-676; *LBT IP I LLC v. Apple Inc.*, No. 22-1613, Dkt. 39, 2023 WL 3914920 (Fed. Cir. June 9, 2023). The panel consisted of Chief Judge Moore, Judge Lourie, and Judge Stoll.

The following case will directly affect or be directly affected by this Court's decision in the pending case: *LBT IP I LLC v. Apple Inc.*, No. 19-cv-1245 (D. Del.). This case is currently administratively closed pending the final outcome of the *inter partes* review being appealed in this case.

## STATEMENT OF JURISDICTION

This appeal arises from a Final Written Decision on Remand of the Patent Trial and Appeal Board in IPR2020-01189. Appx1-35. The Board had jurisdiction under 35 U.S.C. § 6. The Board issued its Final Written Decision on Remand on December 15, 2023, (Appx1-35) and Apple timely appealed (Appx723-727). *See* 35 U.S.C § 142; 37 C.F.R. § 90.3. This Court has jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## INTRODUCTION

The Patent Trial and Appeal Board erred in construing the claim term "threshold values" in U.S. Patent No. 8,497,774 to exclude values corresponding to GPS signal levels and limiting the term to include values associated only with battery power levels. The plain language of the claims requires no such exclusion, and the Board's construction omits one of the only two embodiments in the specification describing the term.

The claims at issue are directed to "manag[ing] electrical resource capability for an electronic tracking device" in, for example, a "Global Positioning Satellite ('GPS') system." In a GPS system, a tracking device searches for GPS signals that it uses to determine location. Seeking GPS signals, however, can rapidly deplete a tracking device's battery life. Thus, the claims aim to manage the device's power resources by focusing on the tradeoff between its battery life and the frequency with which it seeks GPS signals. The claims purport to accomplish this task by "intermittently activat[ing] or deactivat[ing]" "location tracking circuitry" in the device based on "threshold values" associated with a "power level."

The Board held that the term "threshold values" is narrowly limited to values corresponding to a *battery* power level and excludes values associated with GPS signal levels. But the Board's construction, which incorrectly equates the recited "power level" and "threshold values" with *battery* power levels, does not follow in

view of the claim language and specification. Nothing in the claims limits the recited "power level" or "threshold values" to a specific type of "power level." Indeed, the claims separately recite a "battery power level" distinct from a "power level," indicating that the former is a narrower subset of the latter and thus that the broader term "power level" can include power levels beyond battery power levels, such as GPS signal levels. The specification supports this understanding, as it describes two subsets of a "power level" and expressly recognizes activating or deactivating the location tracking circuitry of a tracking device based on the "*power level* of [a] receive[d] communication *signal*," *i.e.*, GPS signal.

The Board further erred by holding that "threshold values" must exclude GPS signal level threshold values because "signal levels" is recited as a separate claim term. But the claims also separately recite a "charge level," which the patent treats synonymously with "battery power level." Thus, under the Board's construction, "threshold values" includes values associated with "battery power levels" but not "charge levels," even though the patent treats battery power levels and charge levels as the same. The Board offered no explanation for this self-contradictory result.

Furthermore, the Board's construction ignores this Court's directive that "absent clear evidence to the contrary," claims should not be interpreted "in a way that would omit a disclosed embodiment." *Apple Inc. v. Corephotonics, Ltd.*, 81 F.4th 1353, 1359-60 (Fed. Cir. 2023). Here, there are only two embodiments in the

specification describing threshold values. In one embodiment, the specification discloses "plac[ing] on standby or in a sleep mode" the location tracking circuitry of a tracking device when a "threshold value" corresponding to a low GPS "signal level" is detected. Figure 3 further details this concept of activating or deactivating the location tracking circuitry of a device based on the "power" of a "signal level." The Board nonetheless concluded the term "threshold values" is instead limited to the other embodiment illustrated in Figure 4, which relates to placing location tracking circuitry on sleep or standby mode based on values associated with battery power levels. The Board, however, offered no principled basis to limit the term to that one embodiment at the exclusion of the other.

Accordingly, because the Board's construction finds no support in the claim language and omits one of the specification's only two relevant embodiments, this Court should reverse the Board's construction of "threshold values" and hold that the term includes threshold values associated with GPS signal levels—not just battery power levels. The Court should remand for the Board to consider whether, under that correct construction, Apple has demonstrated the challenged claims of the '774 patent are unpatentable as obvious.

## STATEMENT OF THE ISSUES

Whether the Board erred by construing the term "threshold values" as limited to values corresponding to battery power levels and excluding values corresponding to received GPS signal levels.

## STATEMENT OF THE CASE

Apple filed a petition for *inter partes* review of LBT's '774 patent, contending that all claims are unpatentable as obvious. Appx57; Appx62. The Board instituted review and found all challenged claims obvious over Japanese Unexamined Patent Application Publication No. 2004-37116A ("Sakamoto"). Appx584-653.

After LBT appealed, this Court vacated and remanded the Board's decision, holding that the term "multitude of threshold values" in claims 8, 10, 13, and 15 requires more than two threshold values. Appx660-676; *LBT IP I LLC v. Apple Inc.*, No. 22-1613, Dkt. 39, 2023 WL 3914920 (Fed. Cir. June 9, 2023). The Court recognized, however, that Apple preserved an argument that Sakamoto disclosed four threshold values—two related to GPS signal level thresholds and two related to battery level thresholds—and instructed the Board to determine on remand whether three or four threshold values is sufficient to constitute a "multitude." Appx672.

On remand, however, the Board did not address that question. Instead, it ordered claim construction briefing on whether the term "threshold values" is limited to values associated with "battery power level threshold values," or whether it could

also include values corresponding to "signal level threshold values." Appx677-680. The Board ultimately concluded that "threshold values" excludes values corresponding to GPS signal levels. Appx1-35. Apple appeals that construction.

## I. The '774 Patent

### A. Background of the Invention

**1.** Claims 8, 10, 13, and 15 of the '774 patent at issue on appeal are directed to "manag[ing] electric resource capability for an electronic tracking device" in a location tracking system. Appx55 (16:43-61). In conventional systems, tracking devices employed integrated "accelerometers" that "detect, measure, and monitor" certain factors such as vibrations and acceleration to determine location, angle, and tilt. Appx48 (1:41-2:56). These systems, however, are prone to "measurement errors" that can compromise their accuracy. *Id.* (2:46-56).

The patent refers to another type of system used for location tracking called a "Global Positioning Satellite ('GPS') system." *Id.* (2:57-62). In a GPS system, a tracking device with location tracking circuitry searches for GPS signals that contain location coordinate information used to determine the device's location. *Id.*; Appx51 (7:29-49); Appx50 (5:45-63). A tracking device may seek GPS signals at predefined intervals of time. Appx49 (4:37-49); Appx54 (14:1-15); *id.* (14:42-47). How often the device searches for these signals is referred to as its "listen rate," and how often location coordinate packets are transmitted is referred to as its "request

rate." Appx53 (11:31-43); *id.* (12:32-49); *see* Fig. 5. Taken together, the frequency with which the device updates its location is the "refresh rate" or its "update rate." Appx53 (11:31-43); *id.* (11:53-57); Appx54 (13:40-43); Appx55 (15:13-21).

**2.** There is a tradeoff between a tracking device's battery life and how often the device attempts to update its location—namely, the more often a device seeks GPS signals and transmits its location, the more quickly its battery is depleted. *E.g.*, Appx51-52 (8:67-9:17) ("the present invention conserves battery power by placing on standby, low power mode, or disabling entirely GPS signal acquisition circuitry"); Appx51 (8:4-11) ("location tracking circuitry 114, may be placed in a sleep or standby mode to conserve a battery level of the battery 118"); Appx54 (13:63-67) (users or system administrators can "intermittently activate or deactivate location tracking circuitry…to conserve power of the power charging unit (e.g., battery 118)"); Appx55 (15:17-21) (referring to the "tradeoff" between the "estimated charge life" and the "update rate … of location information").

Furthermore, if the device is in a "covered structure," and thus the GPS signals are weak because they are "obstructed or partially blocked," the device's battery will be depleted in its "failed attempts" to obtain a better signal. Appx48-49 (2:64-3:11). The specification also discusses scenarios where using a GPS tracking device at a high update rate may be preferred over conserving battery (*e.g.*, tracking a lost dog that has a portable location tracking device), or where conserving battery may be

preferred if frequently obtaining GPS signals is unnecessary (*e.g.*, a construction equipment provider desiring to know the location of equipment only once per day). Appx54 (14:1-15); *id.* (14:39-57); *see also id.* (14:16-39).

In addition, a conventional GPS tracking device has limited ability to control or even monitor its own battery usage. Appx49 (3:11-15) ("during the acquisition of signaling and or other information, a conventional GPS transceiver has limited functionality or capabilities associated with control and monitoring of battery power usage"); *see also id.* (3:16-50). Accordingly, a device with a low battery may continue searching for GPS signals, and therefore further deplete its battery, even though it may not be preferable to do so. *Id.* (3:4-11) ("Not only is a GPS transceiver receiving a weak GPS signal, but also the GPS transceiver is depleting battery power in failed attempts to acquire communication signals from one or more location coordinates monitoring satellites, e.g., GPS satellites[.]").

### B. The Appealed Claims of the '774 Patent

Appealed claims 8, 10, 13, and 15 of the '774 patent involve "manag[ing] electrical resource capability for an electronic tracking device" by focusing on the tradeoff between how often (and by what means) the device attempts to ascertain location and its battery life. Appx38 (Abstract); Appx49 (3:55-4:50). Independent claim 8 is representative, and recites (Appx55 (emphasis added)):

> A local charging management device to manage electrical resource capability for an electronic tracking device that is tracked by at least one other tracking device comprising:
>
> a battery power level monitor;
>
> a charging unit; and
>
> an electrical power resource management component to adjust cycle timing of at least one of a request rate of location coordinate packets to a target host and a listen rate of the location coordinate packets responsive to an estimated charge level of the charging unit;
>
> **wherein the battery power level monitor measures a power level of the charging unit and adjusts a power level applied to location tracking circuitry responsive to one or more signal levels, the <u>power level comprising a multitude of threshold values</u> determined by a user or system administrator to intermittently activate or deactivate the location tracking circuitry to conserve power of the charging unit in response to the estimated charge level of the charging unit**.

The claim recites a "power level comprising a multitude of threshold values . . . to intermittently activate or deactivate" "location tracking circuitry" in the tracking device. Appx55 (claim 8). This "power level" is not limited in the claim to any particular type of "power level." In addition, although the claim recites that the "power level compris[es] a multitude of threshold values," and thus requires that the "power level" include "threshold values," the claim does not specify or limit the type of information to which the "threshold values" may correspond.

The specification is consistent with this claim language. For example, the specification refers to different types of power levels, including the power level of a

GPS signal. *E.g.*, Appx52 (10:38-52) (referring to the "power level of [a] receive communication signal," *i.e.*, GPS signal); Appx51 (7:22-25) (referring to a "signal power level"). And, as discussed below, there are two embodiments that employ threshold values—associated with either GPS signal levels or battery power levels—upon which the location tracking circuitry is activated or deactivated. *Infra* pp. 9-15.

Claims 10, 13, and 15 depend on claim 8. Appx56 (claims 10, 13, and 15). Claim 10 adds "wherein the local charging management device comprises a charge control management of the portable electronic tracking device that estimates charge capability and adjusts cycling of the at least one of a request rate of location coordinate packets to a host target and a listen rate of the location coordinate packets to maximize charge capability." *Id.* (claim 10). Claim 13 adds "wherein the listen rate of the location coordinates comprises a global positioning system (GPS) system refresh rate of the location coordinates." *Id.* (claim 13). Claim 15 adds "wherein the battery power level monitor measures a power level of the charging unit and substantially automatically adjusts power usage responsive to available power of the charging unit to maximize power unit life." *Id.* (claim 15).

### C. The Two Embodiments in the Specification Describing "Threshold Values"

Consistent with the claims, the patent describes two options of managing a tracking device's power resources—by, for instance, adjusting the power level

applied to its location tracking circuitry—using threshold values corresponding to *either* a (1) GPS signal level *or* (2) battery power or charge level. *E.g.*, Appx51 (7:55-62) (signal levels); Appx54 (13:52-67) (battery levels). Each embodiment discloses employing user-adjustable values (corresponding to either the power level of the battery or the GPS signals) to strike the desired tradeoff between (1) the accuracy and frequency of location tracking updates and (2) battery life.

**GPS Signal Level Threshold Embodiment.** As to the first option, the specification explains that when "a first signal level, e.g., a low signal or threshold value, as specified by, for instance, a user or system administrator," is "detect[ed]," the "electrical circuitry associated with GPS signal acquisition" is adjusted such that it is placed "on standby or in a sleep mode." Appx51 (7:50-62). In that scenario, an accelerometer, which does not rely on GPS signals, is instead used for location determination when the received GPS signals are too low. Appx52 (10:38-52).

Figure 3 further describes this concept. Appx43 (Fig. 3); Appx52 (10:38-67). The figure depicts using GPS signal level thresholds to manage the tradeoff between battery life and frequent location updates by, for instance, applying or disabling power to the location tracking circuitry. *Id.* In particular, it shows a "flow chart" (Appx52 (10:38-41)) for "manag[ing] and control[ling] circuitry associated with the electronic tracking device" (Appx50 (5:1-4)):




Figure 3

Appx43 (Fig. 3). The tracking device receives a "communication signal" that includes "location coordinates data," *i.e.*, a GPS signal. Appx52 (10:38-52). Based on the "power level of [the] receive[d] communication signal" (*id.* (10:46-47)), the device adjusts the power level of the location tracking circuitry by either: (1) deactivating the location tracking circuitry if the signal level is below a threshold value and activating an accelerometer to instead track location (S308, where the communication signal is "[equal] to or less than [a] first signal level," and therefore "insufficient for processing"); or (2) reactivating the location tracking circuitry and reverting to the GPS system if the signal level is above a threshold value (S312, where the "power level [is] greater than [the] first signal level," and therefore the power level of the GPS signal is of "sufficient signal strength"). Appx43 (Fig. 3);

Appx52 (10:38-67).

Notably, box S308 in Figure 3 states that the tracking device activates the accelerometer if the "**power level** [**equals**] [] or [is] less than [the] first **signal level**" and, alternatively, box S312 activates the location tracking circuitry if the "**power level** [is] greater than [the] first **signal level**." Appx43 (Fig. 3) (emphases added). Thus, in this regard, Figure 3 expressly equates quantifiable values corresponding to GPS "signal levels" with a power level. *Id.*; Appx52 (10:39-52) (Figure 3 uses processing unit 104 to "determine[] a **power level** of **receive communication signal**") (emphasis added).

Accordingly, in this embodiment, the patent describes adjusting power resources by activating or deactivating the location tracking circuitry of a tracking device based on whether a GPS signal level is above or below a certain threshold. *E.g.*, Appx50 (5:1-4) ("FIG. 3 illustrates a flow diagram to manage and control circuitry associated with the electronic tracking device of FIGS. 1 and 2 in accordance with an embodiment of the present invention"); Appx51-52 (8:67-9:17) (describing embodiment that "conserves battery power by placing on standby, low power mode, or disabling entirely GPS signal acquisition circuitry" "when GPS signaling is not practicable"); Appx51 (8:4-16) ("location tracking circuitry 114, may be placed in a sleep or standby mode to conserve a battery level of the battery"

by "periodically check[ing] availability of GPS signal" "to determine if a receive communication signal is above a first signal level").

**Battery Power or Charge Level Threshold Embodiment.** As to the second option, rather than adjusting the power level applied to the location tracking circuitry based on *signal* level thresholds, the "power level" is "adjust[ed]" based on a selected "threshold value" associated with an "estimated charge level (e.g., battery charge level 406)." Appx54 (13:52-67) ("[T]he present invention has the capability of power level (e.g., battery power level 406) adjustments"). The specification uses the terms "charge level" and "battery power level" synonymously. *E.g.*, *id.* (referring to 406 in Figure 4 interchangeably as "battery charge level" and "battery power level"); *id.* (13:15-16) ("estimate charge level (e.g., battery level 406)"). Figure 4 depicts the second option of preserving battery power:




Figure 4

Appx44 (Fig. 4). In this embodiment, the user can "intermittently activate or deactivate location tracking circuitry" and thus "conserve power of the power charging unit" by adjusting a slider corresponding to a particular value 419 associated with the battery's charge level. Appx54 (13:52-67); Appx53 (11:44-67). This allows the user to view the "real-time trade-off relationships between remaining battery charge level 414 and update rate 446 (e.g., refresh rate) of location coordinate packets" "to achieve a desired user defined battery operating environment, e.g., obtain optimal battery life, obtain optimal update rate, tradeoffs between them." Appx54 (11:44-67). Thus, Figure 4 illustrates that the power level applied to the

location tracking circuitry is "responsive" to an estimated "charge level," *i.e.*, battery power level. *Id.* (13:1-18); *id.* (13:58-67).

Other than these two embodiments, the specification does not define "threshold value," place any limits on the term's scope, or even mention the term. Appx51 (7:50-62) (signal levels); Appx54 (13:52-67) (battery power levels).

## II. Procedural History

### A. *Inter Partes* Review Proceedings

On July 20, 2020, Apple filed a petition for *inter partes* review of the '774 patent, alleging that claims 1, 4, 5, 6, 8, 10, 13, and 15 are unpatentable as obvious. Appx67. Apple explained that the prior art reference Sakamoto rendered those claims obvious, either alone or in combination with other prior art. *Id.* LBT filed a Preliminary Patent Owner Response on December 9, 2020. Appx155; Appx176.

On March 4, 2021, the Board instituted IPR proceedings (Appx179-208), determining that Apple had demonstrated a "reasonable likelihood that it would prevail with respect to at least one challenged claim in the Petition." Appx206. The Board preliminarily construed the term "multitude" in certain claims requiring a "multitude of threshold values" to "include two" or more threshold values, but did not construe "threshold values." Appx189-192.

LBT opposed the Board's preliminary construction of "multitude." *See* Appx285; Appx408. But LBT never offered a construction for or contended the

Board should have construed the term "threshold values." *See* Appx285; Appx408. In response, Apple explained that even under a construction of "multitude" requiring more than two threshold values, Sakamoto discloses the claim limitation. Appx321-325. Apple pointed to four values in Sakamoto that can be configured to conserve battery charge or activate location tracking circuitry: two values corresponding to the "remaining battery amount" (or battery charge) of the device and two "associated with a GPS signal level." *Id.* Apple argued all four of these values are "threshold values" within the meaning of the claims. *Id.*

On March 2, 2022, the Board issued its Final Written Decision, holding all challenged claims unpatentable as obvious in view of Sakamoto.[1] Appx584-653. The Board construed "multitude" to include two threshold values and held that "no other terms require explicit construction." Appx595-602. The Board held that Sakamoto discloses at least two threshold values that can be adjusted based on the battery power level of the apparatus—a fact that LBT had not disputed. Appx624-625. The Board did not reach Apple's alternative argument regarding Sakamoto's disclosure of two additional threshold values corresponding to GPS signal levels.

---

[1] The Board also denied a motion to amend by LBT, which is not at issue on appeal. Appx586.

### B. LBT Appeals the Construction of "Multitude"

LBT appealed the Board's construction of "multitude" as recited in claims 8, 10, 13, and 15 of the '774 patent. Appx668. This Court disagreed with the Board and held that a "multitude" of threshold values requires more than two threshold values. Appx672. Nevertheless, this Court recognized Apple had preserved the argument that "Sakamoto discloses at least four threshold values—two battery level thresholds and two GPS signal level thresholds." *Id.* The Court therefore directed the Board to consider on remand "whether multitude encompasses three or four threshold values and whether the two sets of threshold values disclosed in Sakamoto teach a multitude of threshold values." *Id.*

### C. The Board Construes "Threshold Values" as Limited to Battery Levels and as Excluding GPS Signal Level Threshold Values

On remand, the Board did not address the question this Court had directed the Board to answer. Instead, the Board requested claim construction briefing on the new question of "whether the recited 'threshold values' are limited to battery power level threshold values or whether they may also include signal level threshold values." Appx679-680. The Board requested "simultaneous opening and responsive claim construction briefs," and precluded the parties from submitting new evidence "except file histories . . . (if necessary)." Appx679.

In its opening brief, Apple explained that the construction of "threshold values" must include "GPS signal level threshold values" when read in light of the

specification, which expressly teaches such an embodiment, and that the "plain language of the claim itself" did not exclude that embodiment. Appx694 (citing Appx51 (7:55-59)); Appx698-699. Apple further detailed that the specification, including Figure 3 specifically, discloses conserving power in a tracking device by deactivating the location tracking circuitry of the tracking device (*e.g.*, GPS transceiver) when a "low signal level or threshold value" is detected and instead using the device's accelerometer for location determination. Appx695-696 (citing Appx51-52 (7:55-8:3, 8:7-16, 8:67-9:3)) (emphasis omitted).

By contrast, in its opening brief, LBT ignored Figure 3 and instead focused on Figure 4, which corresponds to the specification's discussion of "threshold values" in conjunction with a battery power or charge level. Appx687-688. LBT also contended that certain dependent claims from the prosecution history supported its construction. *Id.*

In its responsive brief, Apple explained that LBT "completely ignore[d] the GPS signal level embodiment described in columns 7-10" and disregarded the "broad, plain language used in claim 8," which does not exclude "threshold values" corresponding to GPS signal levels. Appx704; Appx708. LBT argued in its responsive brief that Apple "improperly conflate[d] the distinct embodiments of [Figures] 3 and 4," and that the fact the patent "discloses a single GPS signal level

threshold does not overcome the clear disclosure of two distinct types of threshold values." Appx719.

On December 15, 2023, the Board issued its Final Written Decision on Remand. Appx1-35. The Board concluded that GPS "signal level threshold values are not within the scope" of the claim term requiring "the power level comprising a multitude of threshold values." Appx21. The Board held that the "natural reading" of claim 8 associates a "power level" with the "multitude of threshold values," and that "the claim language already incorporates a limitation directed to 'signal levels.'" Appx15-16. The Board further suggested that signal levels cannot be threshold values based on the claim language because the "purpose" of the threshold values is to "conserve power of the charging unit." *Id.* As to the specification, the Board held that the "only reference to a 'multitude of threshold values'" appears in conjunction with battery power levels, and that the specification therefore "directly links the 'multitude of threshold values' with battery power level 406," as shown in the embodiment of Figure 4. Appx16-17.

The Board acknowledged the specification does in fact "use[] the word threshold value" in a second passage, which references a "low signal level." Appx17-18. Yet, here, the Board stated that "the mere use of the word 'threshold' in this context does not tie embodiments pertaining to a signal level, such as the one described in Figure 3, to the recitation 'the power level comprising a multitude of

threshold values'" without offering a basis for this distinction. Appx18. The Board further held that "signal levels" cannot be "threshold values" because claim 8 "already recites that the battery power level monitor adjusts the battery power level 'applied to location tracking circuitry responsive to one or more signal levels,' which incorporates the notion of responding to a signal level threshold." Appx18-19 (emphasis omitted).

Finally, as to LBT's argument concerning the prosecution history, the Board stated that the prosecution history lent "some support" to a construction that "threshold values" "relates to battery power levels and not signal levels," but did not provide further discussion on the subject. Appx21.

Under its construction of "threshold values," the Board rejected Apple's alternative argument that Sakamoto discloses four threshold values—two corresponding to battery power levels and two corresponding to GPS signal levels. Appx31-32. Thus, the Board did not reach the question of whether a "multitude" of threshold values may include three or four values, and concluded that Apple had not shown the challenged claims to be unpatentable as obvious under the Board's new construction of "threshold values." Appx33. Apple appeals the Board's construction of "threshold values."

## SUMMARY OF ARGUMENT

This Court should reverse the Board's construction of "threshold values" and hold that the term includes threshold values associated with GPS signal levels—not just battery power levels. The Court should remand for the Board to consider whether Sakamoto discloses a "multitude of threshold values" under the correct construction. The Board committed three categories of error.

**I.** The Board erred in concluding the "natural reading" of the claims requires limiting "threshold values" to battery power levels at the exclusion of GPS signal levels. For example, the Board incorrectly equated "power level" and "threshold values" with only *battery* power levels, which is not supported by the claim language. To the contrary, the term "power level" in claim 8 encompasses different types of power levels, including the power of GPS signal levels, and is not restricted to battery power levels. Indeed, claim 8 separately refers to a "battery power level" as distinct from a "power level," which under basic claim construction principles indicates that a "battery power level" is distinct from—and is a narrower subset of—a "power level." The specification likewise makes clear that "power level" includes a GPS signal power level.

In addition, the Board held that the "comprising" language in the phrase "the power level comprising a multitude of threshold values" requires that "whatever follows" the "comprising language" "must still be a 'power level.'" However,

although the "comprising" language means that "power level" *includes* "threshold values," nothing in the claims limits "threshold values" to only *battery* power levels, let alone excludes values corresponding to GPS signal levels.

Furthermore, the Board erred in holding that GPS signal levels must be excluded from "threshold values" because "signal levels" is a separately recited claim term. The claims also separately recite "charge levels," which the patent treats synonymously with "battery power levels." Thus, the Board's reasoning that "signal levels" must be excluded from "threshold values" because the term appears elsewhere in the claims would necessarily exclude "charge levels" from "threshold values" as well. Such a conclusion, however, is directly at odds with the Board's construction, which held that threshold values are necessarily values corresponding to battery power—and thus, charge—levels.

**II.** In addition, the Board's construction disregards this Court's instruction that "absent clear evidence to the contrary," claims should not be interpreted "in a way that would omit a disclosed embodiment." *Apple*, 81 F.4th at 1359-60. The specification discloses only two embodiments describing the term "threshold value"; indeed, the term itself is used only twice in the specification. Appx51 (7:55-59); Appx54 (13:58-67). Both embodiments employ user-adjustable values to strike the desired tradeoff between a tracking device's method for updating its location (and the frequency with which it seeks and transmits location updates) and its battery life.

The only meaningful difference between the two embodiments is what those user-adjustable values are: in one, GPS signal level thresholds are the values (*e.g.*, Figure 3), whereas battery power or charge levels are the values in the other (*e.g.*, Figure 4). Indeed, the patent makes clear that values associated with both GPS signal level thresholds and battery charge level thresholds may determine how the "power level" of the same location tracking circuitry is adjusted. Yet, the Board limited "threshold values" to the latter embodiment while omitting the former without any meaningful basis.

**III.** Finally, contrary to the Board's decision, the prosecution history does not support its construction. The Board relied on two claims submitted during prosecution (and later amended) that have separate limitations regarding activating and deactivating location tracking circuitry to support its conclusion that signal levels are not included in threshold values. But these claims did not exclude signal levels from threshold values, nor did the Patent Office or the applicant remark on the scope of "threshold values" during prosecution. Accordingly, these two claims (and the rest of the prosecution history) do not evince a clear and unmistakable disclaimer of the scope of "threshold values."

## STANDARD OF REVIEW

Claim construction is a question of law reviewed de novo. *Apple*, 81 F.4th at 1357-58. Where, as here, the Board relies solely on intrinsic evidence to construe

the claims, the Board's determinations are afforded no deference, and this Court "decide[s] the proper claim construction" de novo. *Id.*; *ABS Glob., Inc. v. Cytonome/St, LLC*, 84 F.4th 1034, 1040 (Fed. Cir. 2023); *see also Seabed Geosolutions (US) Inc. v. Magseis FF LLC*, 8 F.4th 1285, 1287 (Fed. Cir. 2021) (stating that "supporting determinations" based on intrinsic evidence are subject to de novo review). In cases "involving reversal of a Board claim construction, the appropriate course of action is to vacate the Board's decision and remand the matter." *ABS*, 84 F.4th at 1042.

## ARGUMENT

The Board erred in construing "threshold values" to exclude values associated with GPS signal levels. The Board's construction finds no support in the claim language and reads out one of the only two embodiments of a "threshold value" described in the specification. The prosecution history also lends no support to the construction, as it evinces no clear and unmistakable disclaimer of claim scope. Thus, this Court should reverse the Board's construction and remand for a determination of whether Sakamoto renders the claims unpatentable under the correct construction of "threshold values" that includes values associated with GPS signal levels.

## I. The Board Improperly Narrowed the Claim Language to Exclude "Threshold Values" Corresponding to GPS Signal Levels

The Board's construction restricting "threshold values" to battery power levels based on the claim language was error for the three reasons discussed below.

**1.** According to the plain language of the claims, the term "threshold values" has no restriction that would exclude threshold values associated with GPS signal levels. *Apple*, 831 F.4th at 1358 ("We begin, as we often do, with the claim language."). The relevant portion of claim 8 begins with a "battery power level monitor" that performs particular functions including: (1) measur[ing] "a power level of the charging unit" (*e.g.*, battery); and (2) adjust[ing] "a power level of the location-tracking circuitry responsive to" "one or more signal levels." Appx55 (16:53-61). The claim then recites that the adjusted "power level" includes "threshold values determined by a user or system administrator to intermittently activate or deactivate the location tracking circuitry to conserve power of the charging unit in response to the estimated charge level of the charging unit." *Id.*

Thus, the claims require "threshold values," and activating or deactivating location tracking circuitry based on those values. But the plain language of the claims does not require that these "threshold values" be associated with a particular type of power level. To the contrary, as discussed below, the claims read in view of the specification confirm that the "power level of [a] receive[d] communication signal," *i.e.*, a GPS signal level, can be a threshold value used as a basis to activate

or deactivate the location tracking circuitry. Appx52 (10:38-67); Appx51 (7:55-62) ("a low signal level or threshold value" may "activate" the accelerometer and place "electrical circuitry associated with GPS signal acquisition" "on standby or in a sleep mode"); *infra* pp. 34-42.

Nevertheless, the Board concluded claim 8's "natural reading" requires that "the 'power level' associated with the 'multitude of threshold values' is the battery power level that is (1) measured by the battery power level monitor and (2) adjusted by the battery power level monitor and applied to location tracking circuitry." Appx16. The Board likewise held that the "comprising" language in the phrase supported its interpretation because "the power level comprising a multitude of threshold values" means that "whatever follows the term 'comprising' in this limitation must still be a 'power level' to be within the scope of the claim." Appx19. The Board's conclusion was error for two primary reasons.

*First*, the Board's construction incorrectly equated "power levels" and "threshold values" with only *battery* power levels at the exclusion of GPS signal power levels. That reasoning does not follow in view of the claim language. The claims separately refer to a "battery power level" distinct from a "power level" (Appx55 (16:53-61)). Fundamental claim construction principles dictate that the broader term ("power level") should be read to encompass—and not to be limited to—the narrower term ("battery power level"). *Promptu Sys. Corp. v. Comcast*

*Corp.*, 92 F.4th 1372, 1382 (Fed. Cir. 2024) ("The absence of the 'centralized' modifier in the claims, in turn, means that the claimed 'wireline node' must be broader in some way than the 'centralized wireline node' defined in the specification."). Had the applicants intended for "power level" to be limited to *battery* power levels, they therefore knew how to specify that in the claim language. But they did not do so with respect to the term "power level."

The specification also supports this understanding. It refers to a "battery power level" as a mere *example* of a type of "power level" (Appx54 (13:44-51)) ("measures a power level (*e.g.*, **battery power level** 406)") (emphasis added); Appx54 (13:52-56) ("adjusts a power level (e.g. **battery power level** 406)") (emphasis added). Elsewhere, the specification refers to another type of power level—a "signal power level." *See* Appx51 (7:22-29) ("a signal detecting circuitry 115 detects and measures **signal power level**") (emphasis added); *id.* ("the signal processing circuitry 104 processes and measures **signal power level**") (emphasis added). "Power level" therefore cannot be read as narrowly limited to "battery power level," and instead can also refer to other types of power levels, including a "signal power level." *Cordis Corp. v. Medtronic Ave, Inc.*, 511 F.3d 1157, 1173-74 (Fed. Cir. 2008) ("slots" could not be construed to mean only "complete slots" where the specification referred to both "half-slots" and "complete slots"). The Board thus

erred in limiting "power levels" to "battery power levels" at the exclusion of GPS "signal power levels."

*Second*, although the phrase "power level comprising a multitude of threshold values" means that the "power level" must include "threshold values," there is nothing in the claims requiring that these "threshold values" correspond only to *battery* power levels, much less exclude values corresponding to GPS signal levels. *See CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1360 (Fed. Cir. 2007) ("In the patent claim context the term 'comprising' is well understood to mean 'including but not limited to.'"); *Seabed*, 8 F.4th at 1287 (Fed. Cir. 2021) (holding that claim language describing a geophone's "relationship with [its] housing" did not limit a geophone to a particular "type of geophone"); *WundaFormer, LLC v. Flex Studios, Inc.*, 680 F. App'x 925, 931 (Fed. Cir. 2017) (non-precedential) ("The term 'comprising' indicates the claim is open-ended and does not exclude additional, unrecited elements.") (citing *Gillette Co. v. Energizer Holdings Inc.*, 405 F.3d 1367, 1371-73 (Fed. Cir. 2005)).[2] Indeed, the claims expressly contemplate activating or deactivating location tracking circuitry "responsive to one or more signals," *i.e.*,

[2] The Board held that "the word 'comprising,' here is in the body of the claim" and therefore has "no special legal effect." Appx20 (quoting *Moleculon Rsch. Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 n.8 (Fed. Cir. 1986)). But *Moleculon* did not hold that "comprising" can *never* mean "including but not limited to" when used in the body of a claim; to the contrary, in *WundaFormer*, this Court held that the word "comprising" used in the body of a claim "di[d] not exclude additional, unrecited elements." 680 F. App'x at 931 (non-precedential).

based on threshold values corresponding to GPS signals. Appx55 (16:53-61). Accordingly, because nothing in the claim language precludes "threshold values" from including values corresponding to the "power level" of a GPS "signal level," the Board erred by narrowly construing the term to exclude "threshold values" associated with GPS "signal levels." *See Google LLC v. EcoFactor, Inc.*, 92 F.4th 1049, 1058 (Fed. Cir. 2024) (holding that claim language is entitled to a "broader reading" if it "places no constraint" on the scope of the term); *Evolusion Concepts, Inc. v. HOC Events, Inc.*, 22 F.4th 1361, 1366 (Fed. Cir. 2022) (holding that the "generic term" "magazine catch bar" did not exclude particular types of magazine catch bars where "nothing in the language of [the] claims" limited the term).

**2.** The Board further erred in holding that "threshold values" cannot include values corresponding to GPS signal levels because the term "signal levels" is separately recited elsewhere in claim 8. Appx16. The Board's reasoning is at odds with the claim's separate recitation of the term "charge levels," which is necessarily encompassed within the Board's construction of "threshold values." Specifically, under the Board's holding, "charge levels" likewise must be excluded from "threshold values" because the term is also separately recited by claim 8. But that conclusion directly conflicts with the Board's tacit acknowledgement that the term "threshold values" *includes* values associated with "charge levels"—indeed, even the specification treats "charge levels" synonymously with "battery levels."

*Compare* Appx53 (11:11-15) ("battery charge level 406"); Appx54 (13:13-18) ("estimate charge level (e.g., battery level 406)"); Appx53 (11:44-53) ("battery charge level 406" is "responsive to value 419" determined by a user), *with* Appx16-17 ("the specification directly links the 'multitude of threshold values' with battery power level 406"). The Board offered no explanation for this contradiction.

Furthermore, the Board mistakenly relied on *Chicago Board Options Exchange, Inc. v. International Securities Exchange, LLC*, to conclude that "different meanings" must be "ascribe[d]" "to the recited 'signal levels' and 'power level.'" Appx16. As an initial matter, the Board answered the wrong question. The question is not whether "signal levels" and "power levels" have the same meaning. Instead, the question is whether the recited "threshold values" can include values corresponding to GPS signal levels. As explained above, even though "power level" must include "threshold values," the terms are not synonymous and there is nothing in the claims excluding "threshold values" from corresponding to GPS signal levels—in fact, the intrinsic record supports the opposite. *Supra* pp. 25-29.

In any event, *Chicago Board* addressed distinct circumstances, where the patentee argued that the terms "store," "apply," and "contain" had similar meanings even though "[n]othing in the [p]atent suggest[ed]" the terms were "used interchangeably," and the terms instead were treated differently throughout the specification. 677 F.3d 1361, 1368-69 (Fed. Cir. 2012). Here, in contrast, the term

"threshold value" appears just twice in the specification: once in relation to GPS signal levels and once in relation to battery power levels. Appx51 (7:55-59); Appx54 (13:58-67). And the term is treated the same in both instances as a user-adjustable value that determines whether location tracking circuitry is activated or deactivated. *See infra* pp. 31-42.

Thus, the Board erred in its attempt to differentiate between "signal levels" and "power level," which ultimately did not answer the relevant question of what the term "threshold values" includes.

**3.** Finally, the Board suggested its construction is consistent with the "purpose of the 'multitude of threshold values,' which is 'to intermittently activate or deactivate the location tracking circuitry to conserve power of the charging unit in response to the estimated charge level of the charging unit.'" Appx16 (quoting Appx55 (claim 8)). As discussed above and further detailed below, however, the claims and specification directly link GPS "signal level" values to a user's ability to activate or deactivate location tracking circuitry to conserve battery life. *See infra* pp. 34-42. Thus, the claims' "purpose" (Appx16) applies equally to "threshold values" corresponding to both GPS signal levels and battery power levels.

## II. The Board's Construction Improperly Omits One of the Specification's Two Embodiments of "Threshold Values"

In addition to having no support in the claim language, the Board's construction violates this Court's directive that "absent clear evidence to the

contrary," claims should not be interpreted "in a way that would omit a disclosed embodiment." *Apple*, 81 F.4th at 1359. This Court has made clear "the specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

Here, the Board recognized the specification uses the term "threshold value" in conjunction with GPS signal levels, and that Figure 3 illustrates the process of activating or deactivating location tracking circuitry based on the power of a GPS signal—all of which tracks the claim language. Appx17-18. The Board nevertheless excluded this embodiment in its construction, which was error. *Id.* *Apple*, 81 F.4th at 1359 (reversing construction that "would exclude various embodiments disclosed by the specification"); *Google*, 92 F.4th at 1058 ("[T]he Board's claim construction excluding … an embodiment is incorrect.").

**1.** The Board addressed the specification's two references to a "threshold value," but accepted only one as within the scope of the claims without any principled basis. Appx16-19.

**Battery Power or Charge Level Threshold Embodiment.** The Board held, and the parties agree, that "threshold values" encompass the specification's embodiment concerning battery power or charge level threshold values, including

Figure 4. Appx16-17. In its decision, the Board first referred to the specification's passage tying "threshold values" to "battery power level[s]," which states that the invention "has the capability of power level (e.g. battery power level 406) adjustments [that] include [a] multitude of threshold values (see active display 432 of FIG. 4) that is determined by [the] user or system administrator to intermittently activate or deactivate location tracking circuitry" to "conserve power of the power charging unit (e.g. battery 118)." *Id.* (quoting Appx54 (13:52-67)). The Board held this language "directly links the 'multitude of threshold values' with battery power level 406" and with the "user adjustable" embodiment described in Figure 4 below. Appx17; Appx44 (Fig. 4).



Figure 4

Figure 4 "illustrates a screen display" with a "user adjustable cursor display" that a user can adjust to cause the battery power monitor on the tracking device to "intermittently activate or deactivate location tracking circuitry," and thus "conserve power of the power charging unit." Appx50 (5:5-7); Appx54 (13:12-17); *id.* (13:52-67). The specification explains the user can adjust the slider on the display to the user's desired value depending on the frequency with which the user would like to receive location updates (at the expense of consuming battery power) or vice versa. Appx53 (11:44-67). The specification states the user can view the "real-time trade-off relationships between remaining battery charge level 414 and update rate 446 (e.g., refresh rate) of location coordinate packets" in the GPS signals, and can adjust the "slider 432" "to achieve a desired user defined battery operating environment, e.g., obtain optimal battery life, obtain optimal update rate, tradeoffs between them." *Id.* Thus, the specification describes these user-adjustable values illustrated at 419 as corresponding to an estimated charge level 414. Appx54 (13:13-30); *id.* (13:52-67).

**GPS Signal Level Threshold Embodiment.** The other "threshold values" embodiment, which employs GPS signal level thresholds, functions in precisely the same manner as the battery power level threshold embodiment discussed above—except that GPS signal level thresholds are the user-adjustable values instead of battery power or charge levels. Yet, the Board reached the opposite conclusion for

this GPS signal level embodiment, concluding the disclosure of "threshold value" in conjunction with a "low signal level" "does not tie embodiments pertaining to a signal level, such as the one described in Figure 3, to the recitation 'the power level comprising a multitude of threshold values.'" Appx17-18. But the Board never explained why Figure 3 was distinct from the battery power level embodiment that it concluded is encompassed by the claims. Rather, the Board appeared to assume the singular use of "threshold value" when described with reference to a GPS signal level could not equate to the plural use of "a multitude of threshold values." Appx18. The use of the singular form of a claim term, however, does not suggest a different meaning for that term when its plural form is used elsewhere. *Phillips*, 415 F.3d at 1314 (recognizing that "claim terms are normally used consistently throughout the patent"); *Paragon Sols., LLC v. Timex Corp.*, 566 F.3d 1075, 1087 (Fed. Cir. 2009) (holding that the term "unit" should be construed consistently across claim terms to allow both a "data acquisition unit" and a "display unit" to consist of multiple structures).

In any event, there is no support for the Board's arbitrary distinction between the specification's two embodiments describing "threshold values." The specification describes GPS signal levels as associated with user-adjustable values that can be used to strike the desired tradeoff between a device's location-tracking accuracy and frequency and its battery life in precisely the same manner as the

battery levels in Figure 4. *E.g.*, Appx51-52 (8:67-9:17) (describing embodiment that "conserves battery power by placing on standby, low power mode, or disabling entirely GPS signal acquisition circuitry" "when GPS signaling is not practicable"); Appx51 (8:4-16) ("location tracking circuitry 114, may be placed in a sleep or standby mode to conserve a battery level of the battery" by "periodically check[ing] availability of GPS signal, e.g., performs a GPS signal acquisition to determine if a receive communication signal is above a first signal level"); Appx52 (10:38-52) ("battery conservation for [an] electronic tracking device" may be accomplished by "activat[ing] an accelerometer if a power level of the receive communication signal is insufficient for processing").

The first instance of "threshold value" in the specification (at column 7) reads:

> In one embodiment, the accelerometer 130 activates upon one or more designated antenna(s), e.g., antennas 122*a*, 122*b*, detecting a first signal level, e.g., **a low signal level or threshold value**, as specified by, for instance, a user or system administrator.

Appx51 (7:55-59) (emphasis added). As with the discussion of "threshold values" tied to *battery* levels in column 13 (which the Board recognized was linked to the claim language and therefore supported its construction, Appx16-17), the "threshold value" described in column 7 is an example of a "signal level" that can be "specified by, for instance, a user or system administrator" in order to, *e.g.*, "con[s]er[v]e a battery level of the battery." Appx51 (7:50-8:3).

In addition, as with Figure 4, Figure 3 describes that a tracking device's location tracking circuitry is activated or deactivated in response to a threshold value associated with a particular power level (here, a GPS signal level, as opposed to a battery power level described in Figure 4, *supra* pp. 32-34). Appx43 (Fig. 3); *see also* Appx52 (10:38-67) (describing the activation and deactivation of location tracking circuitry in response to the strength of "a power level of the receive communication signal"). Specifically, Figure 3 is a "flow chart" that "illustrates battery conservation for electronic tracking device[s]" (Appx52 (10:38-41)), and allows the user to "manage and control circuitry associated with the electronic device" (Appx50 (5:1-4)).




Figure 3

Appx43 (Fig. 3). The specification explains that the "antenna" in box S302 acquires "a snapshot of receive[d] communication signal including location coordinates data," *i.e.*, a GPS signal. Appx52 (10:38-52); Appx43 (Fig. 3). Then, at step S306, the processing unit "determines a power level of [the] receive[d] communication signal." Appx52 (10:38-52); Appx43 (Fig. 3). At this point, one of two actions (shown in boxes S308 and S312) is taken depending on the "power level" of the "communication signal." Appx52 (10:38-52); Appx43 (Fig. 3). If, as in box S308, the power level of the signal is "[equal] to or less than [a] first signal level" (*i.e.*, "insufficient for processing"), the device activates the accelerometer for location

tracking, rather than continuing to use the more power intensive location tracking circuitry. Appx43 (Fig. 3); Appx52 (10:38-58). On the other hand, if (as shown in box S312) the "power level [is] greater than [the] first signal level" (*i.e.*, if the GPS communication is of "sufficient signal strength"), the "location tracking circuitry" is reactivated. Appx43 (Fig. 3); Appx52 (10:38-67). Figure 3, and specifically boxes S308 and S312, thus recognize that a "power level" can be "equal to" a signal level and that, accordingly, quantifiable values associated with signal level threshold values can dictate the "power level" applied to location tracking circuitry.

Taken together, these disclosures in the specification describe a system for activating or deactivating location tracking circuitry in a tracking device based on the "power level" of a GPS signal, *i.e.*, "signal level," in the same manner Figure 4 describes such a system based on the "power level" of the device's battery, *i.e.*, "battery power level."[3] *Compare* Appx43 (Fig. 3); Appx52 (10:38-67), *with* Appx44 (Fig. 4); Appx53 (11:44-67). The Board thus erred by omitting from its construction Figure 3's embodiment that includes GPS signal level "threshold values." *Apple*, 81 F.4th at 1359; *Google*, 92 F.4th at 1058.

[3] As discussed above, *see supra* pp. 26-29, this passage and Figure 3 also confirm that a "power level" (as used in claim 8) and "signal level" are not mutually exclusive—the GPS signal has its own "power level" that indicates the strength of the signal received by the GPS signal antennas. Appx43 (Fig. 3); Appx52 (10:38-67).

**2.** The remainder of the specification only further supports that the term "threshold values" includes values corresponding to GPS signal levels. For instance, the specification states the "threshold value" associated with the "signal level" can be "specified by, for instance, a user or system administrator" who can "activate[] the accelerometer" or place the location circuitry "on standby or in a sleep mode" to conserve battery. Appx51 (7:50-8:3). This disclosure closely tracks the claim language requiring that "threshold values" be determined by a user and used to activate or deactivate location tracking circuitry in response to the power or charge level of the battery. Appx55 (claim 8). The specification also refers to a "signal power level" (Appx51 (7:22-25)) and to the "power level of [a] receive communication signal" (Appx52 (10:46-47)), which is only further evidence that "power levels" can encompass GPS signal levels.

In addition, the specification repeatedly instructs that activating an accelerometer or reducing the frequency with which the GPS tracking device searches for GPS signals when those signals are low can help conserve battery, allowing a user to select a signal level at which the device switches from using the GPS to using an accelerometer to track location. Appx51 (7:50-8:3) (users can "con[s]er[v]e a battery level of the battery" by "activat[ing] the accelerometer"); Appx51 (8:7-16) (tracking device can "periodically check[] availability of GPS signal" and "may resume GPS signal acquisition using GPS satellite" when a

"receive communication signal level [is] above a first signal level"); Appx51-52 (8:67-9:3) (invention "conserves battery power by placing on standby, low power mode, or disabling entirely GPS signal acquisition circuitry and other associated devices"). Accordingly, "[t]hese disclosures make clear that the crux of the invention" is allowing users to manipulate their electronic devices to strike the user's desired tradeoff between frequent location tracking and prolonged battery life, which "supports an interpretation" of "threshold values" that allows the user to activate the location tracking circuitry based on either GPS signal strength or battery charge level. *Seabed*, 8 F.4th at 1288 (reversing the Board's claim construction where it was not supported by the "crux of the invention" set forth in the specification).

Nonetheless, relying on *Pacing Technologies, LLC v. Garmin International, Inc.*, the Board held that the "mere use of the word 'threshold' in th[e] context" of signal levels was insufficient to impart a broader interpretation to "threshold values" because "every claim does not need to cover every embodiment." Appx17-19 (n.10) (quoting 778 F.3d 1021, 1026 (Fed. Cir. 2015)). In *Pacing Technologies*, however, this Court held it was "not clear that [the] construction exclude[d]" the disputed embodiment and, even if it did, the construction was proper in view of the specification's "clear and unmistakable disavowal" of the alternative construction. 778 F.3d at 1026. The Board also relied on *AllVoice Computing PLC v. Nuance Communications, Inc.* (Appx19 (n.10)), but there the Court rejected an argument that

a claim "implicitly" included a limitation that was present in other claims. 504 F.3d 1236, 1248 (Fed. Cir. 2007). Here, by contrast, neither the specification nor any of the appealed claims excludes GPS signal levels from the scope of "threshold values." *Cf. Evolusion*, 22 F.4th at 1367 ("The specification nowhere limits the scope of a 'magazine catch bar' to exclude factory-installed ones[.]"). Thus, the Board's construction excluding one of the only two embodiments describing the term was reversible error.

## III. The Prosecution History Does Not Compel a Different Conclusion

The Board further erred in agreeing with LBT that certain claims submitted and later amended during prosecution "provide[] some support" for a construction of "threshold values" that excludes GPS signal level values. Appx21. "[B]ecause the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips*, 415 F.3d at 1317. Thus, only a "clear and unmistakable" disclaimer or surrender of claim scope can overcome a contrary construction dictated by the claim language or specification. *Comcast IP Holdings I LLC v. Sprint Commc'ns Co., L.P.*, 850 F.3d 1302, 1313 (Fed. Cir. 2017) (quoting *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003)).

In its opening claim construction brief on remand, LBT cited a claim amendment from the prosecution history as evidence that the "multitude of threshold values" limitation must exclude threshold values corresponding to GPS signal levels. Appx687. LBT argued the "multitude of threshold value[s]" language first appeared in a dependent claim submitted during prosecution (prosecution claim 17) that "corresponds to the embodiment in Figure 4" concerning battery power threshold values (Appx20; Appx687; Appx717):

> wherein the power level comprises a multitude of threshold value[s] determined by a user or system administrator to intermittently activate or deactivate the location tracking circuitry to conserve power of the power charging unit in response to the estimated charge level of the power unit.

Appx687 (quoting Appx2456) (emphasis omitted). LBT then pointed to a second dependent claim from the prosecution (prosecution claim 16) (Appx717) that added:

> wherein the power charging monitor measures a power level of the power charging unit and adjusts a power level applied to the location tracking circuitry responsive to the signal level.

Appx2456. LBT argued that prosecution claim 16 "corresponds to the signal level embodiment of Figure 3" and therefore is distinct from prosecution claim 17. Appx20 (citing Appx719).

Specifically, LBT contended that prosecution claim 17 was intended to "correspond[] to the embodiment of" Figure 4 (Appx717) because the claim included the limitation "the power level comprises a multitude of threshold values,"

and specified that these threshold values were used to "intermittently activate or deactivate the location tracking circuitry"—which, LBT argued, follows the language used in the specification to describe Figure 4. Appx687 (citing Appx2456; Appx53 (11:44-67)). LBT argued that, by contrast, prosecution claim 16, which did not use the phrase "threshold values" but referred to "location tracking circuitry responsive to one or more signal levels," was a "distinct dependent claim" during prosecution and thus could not encompass the battery power level "threshold values" in claim 17. Appx717-719; *see also* Appx2456. The Board agreed that LBT's argument and the "delineation" between the two prosecution claims "provides some support" for a construction of "threshold values" excluding GPS signal level values. Appx21.

The Board's agreement with LBT's argument, which lacked any further explanation, was error. Nothing in the language of either prosecution claim prohibits "threshold values" from encompassing GPS signal levels; indeed, as discussed, the specification ties "threshold value" to both power levels and signal levels, so the mere use of "signal levels" in a separate prosecution claim does not amount to a disclaimer excluding GPS "signal levels" from the definition of "threshold values." *See supra* pp. 31-42. Further, other prosecution claims, *e.g.*, prosecution claim 9, refer to a "charge level" on a "user adjustable cursor display," but make no reference

to "threshold values." Appx2455. Yet, both parties agree that these charge levels may represent threshold values within the meaning of the claims.

In addition, neither the applicant nor the Patent Office suggested the use of "threshold values" in prosecution claim 17 carried any particular significance or served to limit the scope of the claim term. *See* Appx997-1000; Appx1016-1026. Instead, the Patent Office simply denied prosecution claim 16 as anticipated and objected to claim 17 as dependent on a rejected claim. Appx997-999. The applicant amended the claims to combine prosecution claims 16 and 17 "without commenting on the propriety of the rejection" (Appx1024-1026), and the claims were then allowed (Appx1030-1034). Neither the applicant nor the Patent Office "made any particular remarks regarding the differences" between power levels and signal levels, nor any remarks on the scope of "threshold values," and therefore did nothing "clear or unambiguous to disclaim claim scope otherwise encompassed by the broadly drafted claims." *Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1351 (Fed. Cir. 2013) (holding that an exchange with the Patent Office about which claims to elect did not amount to disclaimer).

Thus, because there was no clear and unmistakable disavowal of claim scope, the Board was incorrect to conclude that the "delineation" between the two claims supported its construction. Appx21. That two prosecution claims were different from each other does not shed light on the meaning of "threshold values," nor does

amending claim language by itself evince a clear intention by the applicant to exclude the embodiments described in the specification and distinguish "threshold values" as separate from GPS signal levels. *See Kopykake Enterprises, Inc. v. Lucks Co.*, 264 F.3d 1377, 1382 (Fed. Cir. 2001) (declining to find prosecution disclaimer for "screen printing" where the prosecution history "neither defined 'screen printing' nor excluded a particular printing process from the definition of screen printing"); *Baxalta Inc. v. Genentech Inc.*, 972 F.3d 1341, 1348 (Fed. Cir. 2020) (amendment to substitute "antibody fragments" for "antibody derivatives" in claim during prosecution did not amount to the applicant disclaiming the full scope of "antibody" defined in the specification). The prosecution history therefore cannot overcome the plain language of the claims and the specification, which demonstrate that GPS signal level thresholds are within the scope of "threshold values."

## CONCLUSION

The Board erred in construing "threshold values" to exclude values corresponding to GPS signal levels. Based on that incorrect construction, the Board rejected Apple's argument that the threshold values corresponding to GPS signal levels in Sakamoto constitute a "multitude of threshold values" that render the challenged claims obvious. Appx31-34. For the reasons discussed above, this Court should reverse the Board's construction, hold that "threshold values" include values associated with GPS signal levels, and remand for the Board to consider whether

claims 8, 10, 13, and 15 of the ’774 patent are unpatentable as obvious under this correct construction.

Dated: July 3, 2024

Respectfully submitted,

*/s/ Jaysen S. Chung*

Jaysen S. Chung, *Principal Attorney*
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
(415) 393-8271

Brian A. Rosenthal
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-2339
brosenthal@gibsondunn.com

Julia G. Tabat
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Ave, Suite 2100
Dallas, TX 75201
(214) 698-3465

*Counsel for Appellant Apple Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 3, 2024, I served a copy of the foregoing brief on all counsel of record via this Court's CM/ECF system.

Dated: July 3, 2024

*/s/ Jaysen S. Chung*

Jaysen S. Chung, *Principal Attorney*
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
(415) 393-8271

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of Federal Circuit Rule 32(b)(1) because it contains 10,006 words, excluding the parts of the brief exempted by Federal Circuit Rule 32(b)(2) and Rule 32(f) of the Federal Rules of Appellate Procedure.

2. This brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a monospaced typeface using Microsoft Word 2019 in 14-point Times New Roman font.

Dated: July 3, 2024

*/s/ Jaysen S. Chung*

Jaysen S. Chung
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
(415) 393-8271